**E-FILED**
Thursday, 31 March, 2016  05:15:11 PM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| **TERRY HOFFMAN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil No. 15-3026** |
| | ) | |
| **DEWITT COUNTY, ILLINOIS, an** | ) | |
| **Illinois Governmental Entity;** | ) | |
| **JERED SHOFNER, Sheriff of** | ) | |
| **DeWitt County, Illinois;** | ) | |
| **ANTHONY MONAGHAN, Deputy** | ) | |
| **Sheriff of DeWitt County, Illinois;** | ) | |
| **TERESA BARNETT-HALL,** | ) | |
| **Director of Emergency Services,** | ) | |
| **DeWitt County, Illinois; DAN** | ) | |
| **MARKWELL, and States Attorney** | ) | |
| **For DeWitt County, Illinois, in His** | ) | |
| **Individual and Official** | ) | |
| **Capacities,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>OPINION</u>

SUE E. MYERSCOUGH, U.S. District Judge:

Before the Court is Defendants' Motion to Dismiss Plaintiff's

Amended Complaint Pursuant to Rule 12(b)(6) (d/e 14).

Defendant's Motion to Dismiss is GRANTED IN PART and DENIED

IN PART.  (1) Plaintiff Terry Hoffman's Complaint plausibly alleges a prima facie case for First Amendment retaliation; (2) Hoffman cannot sue State's Attorney Dan Markwell in his official capacity for civil damages because of Markwell's Eleventh Amendment immunity; (3) Markwell does not have qualified immunity in his individual capacity because clearly established in the law prohibits Markman's alleged retaliation against Hoffman; (4) Markwell does not have immunity under the *Noerr-Pennington* doctrine; (5) Hoffman plausibly alleges a *Monell* claim against DeWitt County, through the actions of Markwell; and (6) Hoffman does not plausibly allege a claim for malicious prosecution under Illinois State common law.

## I. <u>BACKGROUND</u>

On January 15, 2015, Plaintiff Terry Hoffman ("Hoffman") filed a Complaint in this Court against Defendants DeWitt County, Illinois, Sheriff Jered Shofner ("Sheriff Shofner), Deputy Sheriff Anthony Monaghan ("Deputy Monaghan"), Deputy Sheriff Nick Hardwick ("Deputy Hardwick"), Deputy Sheriff Ben Wilford ("Deputy Wilford"), and Director of Emergency Services Teresa Barnett-Hall

("Barnett-Hall"), claiming violations of the First Amendment and Fourth Amendment, as well as violations of State law, including false arrest, false imprisonment, and malicious prosecution (d/e 1). After Defendants moved to dismiss all of Hoffman's claims aside from malicious prosecution because the statute of limitations had run, Hoffman moved to file an amended complaint. *See* Def. Mot. to Dismiss (d/e 6); Pl. Mot to Amend/Correct Complaint (d/e 9).  The Court granted Hoffman's motion to amend, and he filed his Amended Complaint on April 24, 2015 (d/e 10).  Hoffman's Amended Complaint named the same defendants as his original complaint and added the current State's Attorney for DeWitt County Dan Markwell ("Markwell") and claimed: (1) First Amendment retaliation against Markwell; (2) a section 1983 *Monell* claim for violation of Hoffman's First Amendment rights against DeWitt County acting through Markwell; and (3) malicious prosecution against Barnett-Hall, Sheriff Shofner, and Deputy Monaghan.  The Court dimissed Defendants Deputy Nick Hardwick and Deputy Ben Wilford in a text order on the same date.  Defendants renewed their Motion to Dismiss under Fed.R.Civ.P. 12(b)(6) on May 22, 2015 (d/e

14).

Defendant's Motion to Dismiss is now GRANTED IN PART and DENIED IN PART.  Hoffman's claims for (1) First Amendment retaliation against Markwell for civil damages, in his official capacity; and (2) malicious prosecution against Barnett-Hall, Sheriff Shofner, and Deputy Monaghan are DISMISSED.  Hoffman's claims for (1) First Amendment retaliation against Markwell for injunction, in his official capacity; (2) First Amendment retaliation against Markwell in his individual capacity; and (3) section 1983 violation of Hoffman's First Amendment rights against DeWitt County, under *Monell* may continue.  Accordingly, Barnett-Hall, Sheriff Shofner, and Deputy Monaghan are DISMISSED as defendants.

In ruling on a motion to dismiss under Fed.R.Civ.P. 12(b)(6), the Court accepts "as true all well-pleaded facts."  The following is a summary of the allegations pled in Hoffman's Amended Complaint.

Below the surface of a significant part of the land of DeWitt County is the Mahomet Aquifer, a large body of underground water running across Central Illinois.  The aquifer serves as the water supply for over 750,000 people in Illinois.  Since 2002, DeWitt

County has had a contract with Peoria Disposal Company authorizing the company to construct and operate a landfill located one mile south of the City of Clinton in DeWitt County.  Peoria Disposal has operated the landfill since the early 1980s.

In approximately 2007, the contract became a matter of public concern because the waste deposited in the landfill by Peoria Disposal included various hazardous wastes.  Peoria disposal does not possess a hazardous waste permit from the Environmental Protection Agency required to deposit such waste in the landfill.  The Mahomet Aquifer lies directly below the landfill, so potentially contaminated rain water passes through the landfill and is deposited into the aquifer.

Hoffman, a 55-year-old retired farmer, ran for election to the DeWitt County Board ("Board") to address the environmental safety of the landfill in November 2012.  Hoffman was elected to the Board on November 6, 2012 and took his oath of office on December 3, 2012.

The DeWitt County Board has twelve members.  Hoffman was among eight 2012 candidates for the Board who successfully ran

campaigns for the position based on concern for the environmental safety of the landfill.  The remaining four members of the Board did not share Hoffman's position on Peoria Disposal's use of the landfill. The landfill issue was hotly contested and generated significant dispute.  Among those opposed to Hoffman on the issue was Sheriff Shofner.

On December 12, 2012, Hoffman accepted an invitation, extended to all the Board members, to tour the DeWitt County Courthouse.  During this tour, Hoffman visited the office of Barnett-Hall.  Hoffman knew Barnett-Hall because the two attended grade school and high school together, though he had not had much contact with Barnett-Hall since then.  Barnett-Hall invited Hoffman into her office where Barnett-Hall and Hoffman sat on chairs on opposite sides of Barnett-Hall's desk.

At some point during Hoffman's visit with Barnett-Hall, Barnett-Hall asked Hoffman if he was glad he was her boss.  She suggested that Hoffman now had the authority to reduce the size of her office space.  In response, Hoffman stood up from his chair, reached across the desk, and lightly touched Barnett-Hall on the

arm, while stating "I would rather have less of the bureaucracy, but I [am not your] boss.  I am only one of twelve on the Board.  It was not just up to me."  Barnett-Hall had no reaction to the gesture and statement at the time and continued her conversation with Hoffman.  The two conversed for another fifteen minutes before Hoffman departed.  When Hoffman left, Barnett-Hall thanked him for visiting.  She informed him that he was the only board member that came to see him, although she had invited all twelve members.

Hoffman remained at the courthouse for approximately another 35 minutes.  He picked up a key to the back door and visited with the State's Attorney[1] before returning home.

At approximately 7:00 p.m. that night, Deputy Hardwick and Deputy Wilford drove their squad cars to Hoffman's home, and pounded on his door.  After Hoffman answered the door, the deputies asked him if he was Terry Hoffman and Hoffman affirmed his identity.  The deputies then asked Hoffman to get his coat and shoes and come with them because Sheriff Shofner wanted to talk

---

[1] Neither party identified the State's Attorney for DeWitt County during the 2012 events that led to Hoffman filing his initial Complaint.  The 2012 State's Attorney is not a party to this lawsuit.  Dan Markwell did not assume office as State's Attorney until 2015.

with Hoffman.  The deputies escorted Hoffman to collect his coat
and shoes.  They asked Hoffman if he had a gun, to which Hoffman
answered "no."

Hoffman asked the deputies if his wife could drive him to meet
with Sheriff Shofner but the deputies refused.  Hoffman told the
deputies that he needed to call a lawyer.  The deputies responded
by telling Hoffman that Sheriff Shofner wanted him to come now
and that they were directed to handcuff Hoffman if he refused.
Hoffman left with the deputies to avoid being handcuffed.  After
again denying Hoffman the ability to call a lawyer, the three men
proceeded to DeWitt County Jail.

At the jail, Deputy Monaghan ordered Hoffman into an
interrogation room.  Deputy Monaghan handed Hoffman a card with
his Miranda rights, which Hoffman read and confirmed having read
when Deputy Monaghan turned on an audio recorder.  Deputy
Monaghan asked Hoffman if he knew what had happened.  Hoffman
responded that he did not.  Alluding to Hoffman's visit with Barnett-
Hall, Deputy Monaghan asked Hoffman if Hoffman knew what a
battery was.  Hoffman responded by asking Deputy Monaghan if

Barnett-Hall had a black eye.  Deputy Monaghan asked Hoffman if he had touched Barnett-Hall.  Hoffman told Deputy Monaghan that he had shaken hands with Barnett-Hall and that the two might have come into contact while they were looking at Barnett-Hall's Operations Manual.

Hoffman alleges that Deputy Monaghan asked Hoffman three times, "[d]id you poke [Barnett-Hall] with your knuckle?"  However, Hoffman admits that these words are absent from the audio recording of the interrogation.[2]  Hoffman responded, "Yes, I did poke her with my finger on her arm."  Hoffman then proceeded to poke Deputy Monaghan on the arm to demonstrate the contact.  Deputy Monaghan left Hoffman in the room.

Deputy Monaghan later returned with Sheriff Shofner, who brought Hoffman a letter directing him not to trespass on County property, except for the time period consisting of fifteen minutes prior to a Board meeting began until fifteen minutes after a Board meeting ended.  After a brief exchange with Sheriff Shofner, Hoffman was escorted to a jail cell, where he remained until 11:30

---

2 Hoffman does not address whether or not the rest of the alleged statements are on the audio recording.

a.m. the next day.  At that time, a judge from another county came to conduct Hoffman's bail hearing.  The judge set Hoffman's bail at $1,000, which Hoffman's wife paid.  Hoffman was released at approximately 12:00 noon on December 13th.  Sheriff Shofner called Board Chairman Sherrie Brown at approximately 9:00 p.m. the night Hoffman was jailed.  Sheriff Shofner told Brown about the arrest and stated that the new board members have to learn how things work.

The State's Attorney referred Hoffman's case to a special prosecutor who was duly appointed by the DeWitt County Circuit Court.  The special prosecutor charged Hoffman in a Criminal Complaint with battery, a Class A misdemeanor, under 420 ILCS 5/12-3(a)(2).  A jury acquitted Hoffman of the battery charge.

On March 2, 2015, just over one month after Hoffman filed his initial Complaint herein, the Board, acting on the advice of the current DeWitt County State's Attorney Markwell, began to exclude Hoffman from receiving any information, participating in Board meetings, or voting on any matter before the Board relating to the following subjects: (1) the Sheriff and his employees; (2) the

Department of Emergency Management; (3) the landfill and the
Peoria Disposal Company; and (4) DeWitt County finances.  The
Board further prohibited Hoffman from discussing issues regarding
any of the above subjects with other Board members or the State's
Attorney.  Based on the legal advice of Markwell, the Board has
continued to exclude Hoffman from the above as a policy of DeWitt
County.

The above directive prevented Hoffman from: (1) participating
in litigation and settlement of litigation concerning the landfill; (2)
voting on the issues of releasing DeWitt County claims against the
Peoria Disposal for unpaid fees and assessments totaling
approximately $1 million and repealing County ordinances that
impose the fees; and (3) disclosing information to his constituents
on matters relating to the landfill.

## II. <u>JURISDICTION</u>

Under 28 U.S.C.A. § 1343(a)(1), this Court has original
jurisdiction over Hoffman's First Amendment retaliation claim,
brought under 42 U.S.C. § 1983.  Further, 28 U.S.C.A. § 1367(a)
grants this Court supplemental jurisdiction over Hoffman's State

claim of malicious prosecution, which forms "part of the same case or controversy."

### III.  **LEGAL STANDARDS**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Plausibility means alleging factual content that allows a court to reasonably infer that the defendant is liable for the alleged misconduct.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007).  Plaintiff's complaint must suggest a right to relief, "raising that possibility above a speculative level." *Kubiak v. City of Chicago*, 810 F.3d 476, 480 (7th Cir. 2016).  A complaint must allow a court to "infer more than the possibility of misconduct." *Iqbal*, 556 U.S. at 678.  The Court "accept[s] as true all of the well-pleaded facts in the complaint and draw all reasonable inferences in favor of the plaintiff." *Id.*

### IV.  **ANALYSIS**

#### a. **Hoffman Plausibly Alleges a Prima Facie Case for First Amendment Retaliation.**

Hoffman claims that Markwell violated Hoffman's First Amendment rights by unlawfully retaliating against Hoffman for exercising his "First Amendment right to petition his government for redress of grievances." *See* Amended Complaint (d/e 10) at 9. Hoffman alleges that, as a result of Hoffman filing his initial Complaint in this Court, on January 29, 2015, Markwell instructed the Board to implement, and the Board so implemented, a directive, which unlawfully restricts Hoffman's First Amendment right, as a member of the Board, to fully participate in the legislative actions of the Board.

In arguing that this Court should dismiss Hoffman's First Amendment retaliation claim, the Defendants misconstrue Hoffman's retaliation claim as two separate claims: one claim for retaliation based on his lawsuit and a separate claim for retaliation based on his speech in opposition of the landfill.  However, this Court finds, and Hoffman explicitly clarifies in his response, Hoffman clarifies in his response, that Hoffman's only retaliation claim is "for his exclusion [from] all meaningful activity on the Board of DeWitt County because of his malicious prosecution

lawsuit." *See* Pl. Response to Def. Mot. to Dismiss (d/e 18) at 2). In

Hoffman's initial Complaint, he made a separate First Amendment

retaliation claim that his prosecution for battery was motivated by

"suppression of Hoffman's speech in opposing hazardous waste

being placed in the landfill." *See* Compl. (d/e 1) at 13-14. However,

Hoffman did not renew this claim in his Amended Complaint. *See*

*id.* (alleging a First Amendment claim based on Hoffman's

prosecution for battery against Barnett-Hall, Sheriff Shofner, and

Deputy Monaghan, the same parties named in Hoffman's malicious

prosecution claim); *compare*, Amended Compl. (d/e 10) at 15-16

(alleging a First Amendment claim against only Markwell and

DeWitt County for retaliating against Hoffman based on his initial

lawsuit).

　　This Court finds that Hoffman plausibly alleges a claim for

First Amendment retaliation against Markwell and DeWitt County

in his Amended Complaint. To present a claim for First

Amendment retaliation, Hoffman must plausibly allege that: (1) he

engaged in activity protected by the First Amendment; (2) he

suffered a deprivation that would likely deter First Amendment

activity in the future; and (3) the protected activity or speech was at least a motivating factor for the deprivation.  *See Woodruff v. Mason,* 542 F.3d 545, 551 (7th Cir. 2008).  Defendants argue that Hoffman has not sufficiently pled any of the three elements.  However, the Court finds that Hoffman plausibly alleges all three elements.

1.  *Hoffman plausibly alleges that he engaged in protected speech.*

Hoffman plausibly alleges that he engaged in activity protected by the First Amendment.  Within the First Amendment right to free speech, citizens have a right to "petition the government for a redress of grievances."  U.S. Const. amend. I.  This First Amendment right to petition "extends to the courts in general and applies to litigation in particular."  *Woodruff,* 542 F.3d at 551.  However, First Amendment retaliation is intended as "protection of free speech, not some concept of an independent right of access to courts."  *Zorzi v. County of Putnam*, 30 F.3d 885 (7th Cir. 1994).  Courts have held that the lawsuits of citizens serving in a public position, like Hoffman's role as a Board member, are not always protected speech.  *See Borough of Duryea v. Guarnieri*, 131 S.Ct.

2488 (2011); *Zorzi*, 30 F.3d 885.  First Amendment protection of lawsuits by public officials is limited to lawsuits in which the official "is speaking 'as a citizen on a matter of public concern.'"  *Hagan v. Quinn*, 84 F.Supp.3d 826, 830 (C.D.Ill. 2015) (quoting *Guarnieri*, 131 S.C.t at 2501).

Defendants do not argue that Hoffman was not speaking as a citizen when he filed his initial Complaint.[3]  Further, Hoffman clearly filed his lawsuit as a "citizen" and not within his role as a Board member.  Hoffman's claims in his initial lawsuit, malicious prosecution, First Amendment retaliation, and other Constitutional violations concerning his arrest, are all alleged violations of his individual rights stemming from his prosecution as an individual for battery.  *See* Compl. (d/e 1).

Further, Hoffman's allegations support a finding that his lawsuit is "a matter of public concern."  "The public concern element is satisfied if the speech can fairly be said to relate to a matter of political, social, or other concern to the community, rather

---

3 Defendants do make an extensive argument that Hoffman was not speaking as a citizen, in the context of whether Hoffman's speech opposing the landfill is protected.  However, the Defendants' argument is not relevant to Hoffman's alleged act of protected speech, *i.e.*, filing his initial Complaint.

than merely a personal grievance." *Hagan*, 84 F.Supp.3d at 830 (quoting *Gustafson v. Jones*, 290 F.3d 895, 908 (7th Cir. 2002)). The Defendants argue that Hoffman does not and cannot allege that his lawsuit is of public concern because the suit contains only the present First Amendment claim and a claim for malicious prosecution. *See* Def. Mot. to Dismiss (d/e 14) at 10-11. However, Hoffman's present retaliation claim does not rest on the filing of his Amended Complaint, as Defendants' argument suggests.

Clearly, Hoffman alleges that the alleged retaliation occurred prior to his filing of the Amended Complaint, wherein he raises the present claim for retaliation. Hoffman alleges that the Board began to exclude Hoffman on March 2, 2015, and he filed his Amended Complaint on April 24, 2015. Instead, Hoffman alleges that the retaliation occurred as a result of his initial Complaint. *See* Amended Compl. (d/e 10) at ¶56 (referring to Hoffman's claim for "false arrest," which is only made in his initial Complaint).

Therefore, to determine whether Hoffman's speech was a matter of public concern, the Court must analyze Hoffman's initial Complaint filed in this Court. In Hoffman's initial Complaint, he

alleges malicious prosecution and other Constitutional violations based on his arrest.  *See* Compl. (d/e 1).  The Defendants argue in their motion that Hoffman's claims relating to his prosecution are clearly personal and not of concern to the public.  *See* Def. Mot. to Dismiss (d/e 14) at 10-11.  However, Hoffman also alleges that he was prosecuted in retaliation for speaking out against the landfill during his campaign.  *See id.* at ¶¶ 45-46.

In *Zorzi*, the Seventh Circuit found that one individual's First Amendment retaliation claim can be a matter of public concern.  30 F.3d at 897-98.  The plaintiff alleged that she was fired by the Putnam County Sheriff's office because she openly supported the State's Attorney's campaign for re-election.  The State's Attorney had been publically critical of the newly elected sheriff during the State's Attorney's previous term, alleging many instances of misconduct.  *See id.*  The court found that, although the plaintiff was the only individual fired in retaliation for politically supporting the Putnam County State's Attorney, "the firing may have had a chilling effect on all the other employees."  30 F.3d at 897-98. Further, the First Amendment retaliation "threatened the general

public from learning of the problems in the Putnam County Sheriff's Office." *See id.*

As in *Zorzi*, Hoffman's claim in his initial Complaint that he was prosecuted in retaliation for speaking out about the landfill may have chilled the speech of other citizens, most notably other Board members, and, consequently, prevented the general public from learning about an important issue.  Hoffman specifically alleged that seven other newly elected Board members ran campaigns based on an identical position on the landfill issue as Hoffman.  *See* Compl. (d/e 1) at ¶¶18-19.  Further, Hoffman alleged that, after he was jailed, Sheriff Shofner called the Board Chairman and told her that "the new county board members need to learn how things work."  *See id.* at ¶40.  The Sheriff's alleged effort to make an example of Hoffman in order to chill the speech of the other new Board members supports an inference that Hoffman's lawsuit was a matter of public concern.

2.    *Hoffman plausibly alleges that he suffered a deprivation.*

Hoffman also plausibly alleges that he suffered a deprivation that was likely to deter First Amendment speech.  The Defendants

argue that Hoffman has not suffered any deprivation because the
minutes of Board meetings occurring after March 2, 2012 show
that, contradictory to Hoffman's allegations, he was still able to
participate in the discussion of issues related to the landfill and
County finances.[4]  *See* Def. Mot. to Dismiss (d/e 14) at 11-12; *see
also* Exh. B, C, and D to Def. Mot. to Dimiss (d/e 14-2, 14-3,14-4).
The Defendants note that the Court, in a motion to dismiss, may
take judicial notice of County Board meeting minutes.  *See* Def.
Mot. to Dismiss (d/e 14) at 11 n.3 (citing *Roller v. Bd. Of Educ. of
Glen Ellyn Sch. Dist. No. 41*, No. 05-C-3638, 2006 WL 200886, at 4
n.2 (N.D. Ill. 2006); *Yahnke v. County of Kane*, No. 12-C-5151, 2015
WL 1980248, 4 (N.D.Ill. 2015)).  This Court agrees that the Board's
minutes fall into the narrow exception of "fact that is both not
subject to reasonable dispute and...capable of accurate and ready

---

4 Defendants mention, in a parenthetical comment, that Hoffman's
participation in Board activities regarding the issues alleged in the Complaint
would violate the Illinois Public Officer Prohibited Activities Act ("the Act").  *See*
Def. Mot. to Dismiss (d/e 14) at 12; *see also* 50 ILCS 105/3(a).  The Act
prohibits State officers from voting on "any contract or the performance of any
work" in which the officer has a direct or indirect financial interest.
Defendants do not articulate an argument for the possible applicability of the
Act to the issues raised by Hoffman, nor do they allege that Markwell advised
the Board to exclude Hoffman because of the Act.  For these reasons and
because the present state of this litigation does not include a developed factual
record, the Court finds that the issue is best reserved for summary judgment.

determination by resort to sources whose accuracy cannot reasonably be questioned." *General Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1081 (7th Cir. 1997).

However, the Court does not consider only the reliability of the document but also the "evidentiary value" of the facts within the document. *Id.* at 1082. As Hoffman points out in his response, the minutes relied on by the Defendants only contain two instances that could be interpreted as contradictory to Hoffman's allegations: (1) at the March 19, 2015 meeting, Hoffman asked one question on the Mahomet Aquifer; and (2) at the April 23, 2015 meeting, Hoffman moved to table approval of a settlement regarding the landfill and ultimately voted against approval. *See* Exh. B, C, and D to Def. Mot. to Dimiss (d/e 14-2, 14-3,14-4). The Defendants additionally cite the fact that Hoffman generally "participated and voted" at the meetings.

However, despite the inherent veracity of these minutes, the facts within the minutes do not eliminate all factual dispute about whether Hoffman was excluded from receiving information, discussing, and voting on the issues listed in the Amended

Complaint. *See General Elec.*, 128 F.3d at 1083 (The Court cannot

take judicial notice of a fact whose "*application* is in dispute.")

(emphasis added).  In Hoffman's response, he alleges that, in

discovery, he will produce documents showing that Hoffman was

denied access to information about the landfill and that DeWitt

County excluded him from the subjects noted in the Amended

Complaint.  *See* Pl. Resp. to Def. Mot. to Dismiss (d/e 18) at 8-9.

The motion to dismiss stage is not the proper time for a court to

settle factual disputes of this nature because all facts and

reasonable inferences are construed in the plaintiff's favor.

The parties expend a fair amount of effort in their briefs

arguing about whether Hoffman's speech pursuant to his role as a

member of the Board is protected First Amendment speech.

However, the issue is not relevant to Hoffman's retaliation claim.

Hoffman is not required to show that the deprivation he suffered

constituted an infringement on protected speech.[5]  As noted earlier,

Hoffman must allege that he *initially engaged in protected speech*,

as he has here by alleging that he filed his initial Complaint, which

_____

5 This issue, however, is relevant to Hoffman's *Monell* claim, discussed *infra*
Part IV.c.1.

this Court found to be protected speech.  Then, Hoffman must allege that the retaliation he suffered "would likely deter First Amendment activity in the future."  *Woodruff*, 542 F.3d at 551.  For example, in a large number of First Amendment retaliation cases, the deprivation suffered is termination from employment.  *See, e.g. Zorzi*, 30 F. 3d 885.  The First Amendment does not provide citizens the right to be employed.  However, if employees are not likely to exercise their First Amendment right to speak because the employees think that they will be terminated from their employment in retaliation for speaking, then protected speech of the employees is "likely deter[red]."  *Woodruff*, 542 F.3d at 551.

Similarly, in this case, even if the ability to participate in activities related to membership on the Board is not a First Amendment right, if Board members do not engage in protected speech, like the filing of lawsuits on matters of public concern, because the Board members fear that, in retaliation, they will be excluded from aspects of their membership on the Board, then, again, protected speech is "likely deter[red]."  Therefore, Hoffman plausibly alleges a deprivation likely to deter First Amendment

protected speech.

3.   *Hoffman plausibly alleges a causal link between his protected speech and the retaliatory deprivation.*

Finally, Hoffman must plausibly allege that his protected speech was at least a motivating factor of his deprivation. Defendants' lone argument that Hoffman has not sufficiently alleged a causal link is that Hoffman "does not plead the authority with which the State's Attorney directed the County Board to exclude Hoffman."  Def. Mot. to Dismiss (d/e 14) at 13.  However, Hoffman alleges that Markwell's legal advice to the Board led the members to exclude Hoffman.  *See* Amended Compl. (d/e 10) at ¶ 46 (alleging that the Board members, not being lawyers "rely on the State's Attorney...for legal advice).  Further, Chapter 55, Illinois Compiled Statutes Annotated, Act 5/3-9005, the statute enumerating the "Powers and duties of State's attorney," provides that a State's Attorney is to "give his opinion...to any county officer in his county, upon any question or law relating to any criminal or other matter, in which the people or the county may be concerned."

Further, the Seventh Circuit standard for causation in this case does not require that the actor have the authority to violate the

plaintiff's rights.  The Seventh Circuit states that"[t]he requisite causal connection is satisfied if the defendant sets in motion a series of events that the defendant knew or should reasonably have known would cause others to deprive the plaintiff of her constitutional rights."  *Conner v. Reinhard*, 847 F.2d 384, 397 (7th Cir. 1988).  Hoffman specifically alleges that Markwell advised the Board to exclude Hoffman.  *See* Amended Compl. (d/e 10) at ¶45. Hoffman alleges that his exclusion from participation in Board activities, the deprivation in question, was a direct result that would not have occurred but for the action taken by Markwell.  *See Thayer v. Chiczewski*, 705 F.3d 237, 252 (7th Cir. 2012) ("If retaliation is not the but-for cause of the arrest, the claim fails for lack of causal connection.") (internal quotations omitted).   Further, Hoffman's allegations create a timeline that justify an inference of causation. *See Filipovich v. K&R Exp. Systems, Inc.*, 176 F.3d 390, 404 (7th Cir. 1999) ("Generally, a plaintiff may establish such a link through evidence that the discharge took place on the heels of protected activity.").  The Court issued summons to all defendants on February 11, 2015.  *See* (d/e 2).  Although, the summons were

never returned as executed, attorney appearances were entered on

behalf of the Defendants named in Hoffman's initial Complaint on

February 20, 2015.  *See* (d/e 3,4).  Therefore, Defendants had

notice of Hoffman's lawsuit sometime between Febuary 11 and

February 20, 2016.  Hoffman began suffering the alleged

deprivations shortly thereafter, on March 2, 2015.  Further, issues

that Hoffman has been allegedly excluded from participating on

directly parallel the issues in Hoffman's initial Complaint.

Therefore, Hoffman sufficiently pleads a causal link sufficient to

survive a motion to dismiss.

    b. **Markwell Is Shielded From Damages in His Official Capacity by the Eleventh Amendment But He Has Not Established Qualified Immunity or Immunity Under *Noerr-Pennington* in His Individual Capacity.**

    1.    *Hoffman concedes that Markwell cannot be sued for civil damages in his official capacity.*

Hoffman concedes that the Eleventh Amendment immunizes

Markwell from Hoffman's claim of damages against Markwell in his

official capacity as State's Attorney.  *See* Pl. Resp. to Def. Mot. to

Dismiss (d/e 18) at 11-12.  However, because Hoffman is also

seeking an injunction against Markwell as to his involvement in

advising the Board to exclude Hoffman from participation in Board activities, Markwell remains in this lawsuit in his official capacity for the purposes of the claimed injunctive relief. *See Ameritech Corp. v. McCann*, 297 F.3d 582, 586 (7th Cir. 2002) (holding that "a party can sue a state officer in his or her official capacity to enjoin prospective action that would violate federal law") (internal quotations omitted).

2.  *Markwell is not protected by qualified immunity because his alleged actions violate clearly established law.*

Markwell additionally claims that qualified immunity shields him from Hoffman's damage claims against Markwell in his individual capacity. In considering the defense of qualified immunity, the court considers: (1) whether the plaintiff has presented the deprivation of a constitutional right; and (2) whether the constitutional right was clearly established at the time of the misconduct. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009). The Court has already found that Hoffman sufficiently alleges the deprivation of a constitutional right in claiming First Amendment retaliation. The question now before the Court is whether that right

was "clearly established" on March 2, 2012.

As the Defendants note, once qualified immunity has been raised, the burden is shifted to the plaintiff to defeat the immunity. *See Wheeler v. Lawson*, 539 F.3d 629, 639 (7th Cir. 2008).  The Defendants further argue that they "have uncovered no case law" that addresses the specific factual situation of a State's Attorney advising a County board to "exclude a person who is simultaneously suing the County and serving as a board member from receiving certain information, participating in certain discussions, or voting on certain topics."  Def. Mot. to Dismiss (d/e 14) at 14.  Courts have continually noted that the difficulty in a qualified immunity inquiry is "identifying the level of generality at which the Constitutional right must be clearly established."  *See Volkman v. Ryker*, 736 F.3d 1084, 1090 (7th Cir. 2013) (quoting *Casey v. City of Fed. Heights*, 509 F.3d 1278, 1284 (10th Cir. 2007)).  The Supreme Court has advised courts "not to define clearly established law at a high level of generality."  *Ashcroft v. al-Kidd*, 131 S.Ct. 2074, 2084 (2011).  However, Markwell defines the right far too narrowly.  The Seventh Circuit has held that the

plaintiff must show that the "contours" of the right he alleges was violated are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Volkman*, 736 F.3d at 1090 (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)).

This Court finds that the "contours" of the right Hoffman alleges was violated are "sufficiently clear" that Markwell would know he was violating Hoffman's First Amendment rights.  As this Court found *supra* Part IV.a.3, the First Amendment right to petition extends to the courts and litigation.  *See Woodruff*, 542 F.3d at 551.  The Court further found that a lawsuit filed by a public official is only protected speech if the lawsuit speaks on a matter of public concern.  However, the Seventh Circuit's holding in *Zorzi* that a plaintiff's lawsuit claiming First Amendment retaliation is speech on a matter of public concern has been binding law in this circuit for over twenty years.  *See* 30 F.3d at 897.  This Court found that Hoffman's alleged exclusion from participating was very likely to have a chilling effect on other Board members who might consider filing lawsuits against the County.  Therefore, Markwell does not have qualified immunity.

3. *Markwell is not immune from liability under the Noerr-Pennington Doctrine.*

Alternatively, Markwell claims that his alleged action is immunized based on the *Noerr-Pennington* doctrine. *See* Def. Mot. to Dismiss (d/e 14) at 15. The *Noerr-Pennington* doctrine provides that "parties may petition the government for official action favorable to their interests without fear of suit, even if the results of the petition, if granted, might harm the interests of others." *See Tarpley v. Keistler*, 188 F.3d 788, 794 (7th Cir. 1999). The doctrine protects "litigation, lobbying, and speech…as an application of the First Amendment's speech and petitioning clauses." *New West, LP v. Joliet*, 491 F.3d 717, 722 (7th Cir. 2013). The Seventh Circuit has extended the *Noerr-Pennington* doctrine to government officials as well. *See id.* at 721-22 (7th Cir. 2013) (holding that Joliet public officials' actions of filing litigation, sending letters, and making public statements regarding a property in an effort to persuade the Department of Housing and Urban Development to cut funding to the property were protected by the First Amendment). In doing so, the court recognized that public officials may act as people, not always as appendages of the government. *See id.*

However, as the *Noerr-Pennington* doctrine is based upon the First Amendment, Markwell's action only falls under the doctrine if the speech is protected by the First Amendment.  Markwell claims that, if he did advise the Board to exclude Hoffman, Markwell's ability to "petition" the Board for such a result is protected by the First Amendment.  However, Hoffman alleges that Markwell advised the Board to exclude Hoffman as legal advice in Markwell's role as State's Attorney of DeWitt County.  *See* 55 ILCS 5/3-9005.  The Supreme Court has held that "[w]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes."  *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006).  Markwell's alleged act was not an effort to petition the board for a certain result but, rather, was his professional advice on legal issues.  Because Markwell's act of giving legal advice to the Board falls under his duties as State's Attorney of DeWitt County, Markwell was not engaging in First Amendment-protected speech.  Therefore, Markwell's alleged action is not immunized under the *Noerr-Pennignton* doctrine.

### c. **Hoffman's Participation in Board Activities Is Protected**

### **By the First Amendment and He Plausbily Alleges a *Monell* Claim Against DeWitt County.**

Hoffman further alleges that Dewitt County, through Markwell, violated his First Amendment rights by instituting an official policy of excluding Hoffman from participating in his duties as a member of the Board. [6]  Hoffman alleges that DeWitt County is liable under *Monell*.  *See* Amended Compl. At ¶ 46.  In *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 660-61 (1978), the Supreme Court held that local governmental entities were liable under section 1983 for constitutional violations attributable to a local government's policy or practice.

To sufficiently plead a *Monell* claim, Hoffman must plausibly allege two elements.  First, Hoffman must allege that he has suffered a constitutional violation.  *See Matthews v. City of East St. Louis*, 675 F.3d 703, 708-09 (7th Cir. 2012) ("Here, there was no

---

6 In Hoffman's response he suggests that he also has a *Monell* claim through the actions of the Board in excluding him.  *See* Pl. Response to Def. Mot. to Dismiss (d/e 18) at 16 ("Likewise the vote of the County Board members to exclude Hoffman from participation on the specified subjects is the policy of DeWitt County, Illinois.").  However, Hoffman does not make this allegation in his Amended Complaint but rather only alleges that the DeWitt County Board has "followed [Markwell's] advice as the policy of DeWitt County."  Amended Compl. (d/e 10) at ¶ 46.  Therefore, this Court does not address any potential *Monell* claim based on the actions of the Board.

constitutional violation, therefore no municipal liability.").  Second,

Hoffman must allege that the violation came as a result of an

express policy, a widespread practice, or the act of a final policy

maker.  *See Estate of Sims v. Cty of Bureau*, 506 F.3d 509, 515 (7th

Cir. 2007).  The policy, practice, or final act must be the "moving

force" behind the violation.  *See id.* at 514 ("[T]he complaint must

allege that an official policy or custom not only caused the

constitutional violation, but was the moving force behind it.")

(internal quotations omitted).

    *1. Hoffman plausibly alleges a constitutional deprivation.*

Defendants argue that Hoffman has not alleged a

constitutional deprivation.  In his *Monell* claim, Hoffman does not

claim that his alleged First Amendment retaliation came as a result

of an official policy of DeWitt County to retaliate against public

officials or employees who file lawsuits.  *See* Amended Compl. (d/e

10) at ¶¶ 46, 55.  However, Hoffman alleges that his exclusion from

Board activities on the listed subjects constitutes an independent

violation of his First Amendment rights.  Defendants argue that

Hoffman's exclusion is not a First Amendment violation because

Hoffman, as a Board member, is a public employee and, therefore, he falls under the holding of *Garcetti*, discussed earlier, that public employees are not exercising their First Amendment rights when they are acting within the duties of their employment. *See* 547 U.S. at 421.

Defendants further argue that Hoffman is exempt from First Amendment protection under the "policymaker" exception announced in *Pleva v. Norquist*, 195 F.3d 905, 911-12 (7th Cir. 1999). In *Pleva*, the Seventh Circuit held that public employees in policymaking positions are exempt from First Amendment retaliation protection because "a newly elected administration has a legitimate interest in implementing the broad policies it was elected to implement without interference from disloyal employees." *Id.* at 912.

Hoffman argues, however, that he is not an ordinary public employee, subject to the holdings in *Garcetti* or *Pleva*, because his position of Board member is a legislative position. Therefore, he argues that this Court should follow the United States Supreme Court's holding in *Bond v. Floyd*, 385 U.S. 116 (1966) and declare

Hoffman's ability to participate in the legislative functions of the
Board to be a First Amendment right.  In *Bond*, the United States
Supreme Court enjoined Georgia from preventing a newly elected
legislator from taking office because of the legislator's anti-Vietnam
War statements.  *See id.*  The Court held that legislators are given
"the widest latitude to express their views on issues of public
policy."  *Id.* at 349.  The Court reasoned that the First Amendment
rights of legislators are especially important because of the "interest
of the public in hearing all sides of a public issue" and so that the
public "may be represented in governmental debates."  *Id.*; *see also*
*Garrison v. Louisiana*, 379 U.S. 64, 74-75 (1964) ("The right to vote
freely enables legislators to consummate their duty to their
constitutents.").  Hoffman argues that the Supreme Court's holding
in *Bond* supports his claim that his rights to receive information on,
discuss, and vote on all issues in his capacity as a Board member is
protected by the First Amendment.

A County Board is a legislative body.  *See Carver v. Sheriff of*
*LaSalle County, Illinois*, 243 F.3d 379, 381 (7th Cir. 2001) (referring
to the County Board as "the county's legislative branch"); *Lutheran*

*Social Services of Illinois v. Henry County*, 464 N.E.2d 811
(Ill.App.3d 1984) (The Illinois Supreme Court "designat[ed] a county
board as a legislative body.").  Most federal courts to address the
specific issue of whether a public official in a legislative position has
a First Amendment right to speech in pursuance of his duties have
agreed with Hoffman in following the holding of *Bond*. *See
Conservation Comm'n of the Town of Westport v. Bealieau*, 2008 WL
4372761, 4 (D.Mass. 2008) (finding *Garcetti* inapplicable to "public
officials"); *Miller v. Town of Hull, Mass.*, 878 F.2d 523, 530 (1st Cir.
1989) (stating that the court had "no difficulty in finding that the
act of voting on public issues by a member of a public agency or
board comes within the freedom of speech guarantee of the first
amendment" in a retaliatory discharge claim by a board member,
although additionally noting that a State statute permitted removal
only for "inefficiency, neglect of duty or misconduct in office").
Other federal courts have rejected arguments based on *Bond* or
*Miller*; however, the facts of those cases distinguish them from the
holdings of *Bond* and *Miller*.  *See Shields v. Charter Tp. of Comstock*,
617 F.Supp.2d 606, (W.D.Mich. 2009) (holding that a town board

could prevent an elected member from speaking at a town meeting where the board member "could not identify any topic of discussion he was prevented from exploring" during the meeting of the board to discuss the same issues where he was given "ample time to speak"); *Rash-Aldridge v. Ramirez*, 96 F.3d 117, 119 (5th Cir. 1996) (holding that *Bond* and *Miller* did not apply because the plaintiff was appointed to the city council by the mayor rather than elected by the public).

In *Pleva*, cited by Defendants in arguing that Hoffman is exempt from First Amendment protection, the Seventh Circuit rejected an argument based on *Miller*; however, the court distinguished *Pleva* from *Miller* because the plaintiff in *Pleva* was appointed by the mayor rather than elected and, further, unlike in *Miller*, no statute insulated the plaintiff in *Pleva* from not being reappointed based on political views. *See* 195 F.3d at 916-17. The court further noted that "[h]ad Pleva's reappointment to the Board been...constrained by state statute, First Amendment considerations might come into play." *Id.* at 916. This Court finds that Hoffman's case is distinguishable from *Pleva* and *Rash-*

*Aldridge* because Hoffman is an elected official who is being prevented from representing his constituents rather than an employee silenced by the executive who appointed him.  This case is also distinguishable from *Shields* because Hoffman is being excluded from any opportunity to present his views, not simply prevented from having an additional opportunity to express his views as a citizen.

This case is further distinguished from Seventh Circuit precedent in *Pleva* because, here, a State statute, 55 ILCS 5/5-1087, provides that "[n]o county board may alter the duties, powers and functions of county officers that are specifically imposed by law."  In this case, the Hoffman's duties of participating in the "exercise" of "[t]he powers of the county as a body corporate or politic" provided by 55 ILCS 5/5-1004 are being unlawfully "altered" by Hoffman's exclusion from exercising his duties in regard to certain subjects.  Therefore, this Court finds that Hoffman has plausibly alleged a First Amendment violation in his *Monell* claim.

2. *Hoffman plausibly alleges an identifiable policy, which resulted in the constitutional violation.*

Defendants do not argue in their motion that Markwell's advice to the Board does not constitute the final act of a policy maker.  Defendants only argue that Hoffman has not alleged a constitutional deprivation and that actions of the Board are protected by "absolute legislative immunity."  *See* Def. Mot. to Dismiss (d/e 14) at 17.  However, Hoffman plausibly alleges an official policy, instituted by Markman, based on the theory that Markman is an official policymaker for DeWitt County.

In *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986), the Supreme Court held that "[i]f the decision to adopt [a] particular course of action is properly made by [a] government's authorized decisionmakers, it surely represents an act of official government policy."  The Court clarified that "not every decision," but only those decisions based on "authority," either "granted directly by a legislative enactment" or "delegated by an official who possesses such authority," renders a municipality liable under section 1983.  *Id.* at 481-83.  Specifically, in *Pembaur*, the Supreme Court found that the legal advice of a prosecutor was a final act of official municipal policy, when his "considered decision based on his

understanding of the law" led him to advise the sheriff to forcibly

enter the petitioner's workplace, an act which ultimately violated

the petitioner's Fourth Amendment rights.  *Id.* at 484.  The Court

then pointed to an Ohio statute that authorized county officers to

seek "instructions" from the prosecutor in such matters.  Because

the state had specifically delegated to the prosecutor the authority

to provide the sheriff with a legal opinion on this issue, the

Supreme Court found that the prosecutor's advice was the act of a

final policymaker.  In *Teesdale v. City of Chicago*, 690 F.3d 829, 835

(7th Cir. 2012), the Seventh Circuit further clarified that the final

decisionmaker's action constitutes official policy if the

"decisionmaker made a definite choice to pursue a course of

action."

In the present case, Markwell allegedly made a decision based

on his understanding of the law when he advised the Board

members "who are not lawyers and rely on the State's Attorney's

advice" to exclude Hoffman.  Amended Compl. (d/e 10) at ¶ 46.

Further, the State's Attorney is authorized by State statute to advise

"county officer[s]" on "any question of law relating to any criminal or

other matter, in which the people of the county may be concerned."
55 ILCS 5/3-9005(a)(7) (listing the "Powers and duties of State's
attorney").  Hoffman plausibly alleges that the "directive" Markwell
gave to the Board was a definite choice to pursue a specific legal
course of action.  *See* Amended Compl. (d/e 10) at ¶ 46.
Accordingly, under *Pembaur*, this Court finds that Markwell's action
in advising the Board on Hoffman's lawsuit established DeWitt
County official policy.  Therefore, Hoffman sufficiently pleads a
*Monell* claim.

### d. **Hoffman Does Not Plausibly Allege a Claim for Malicious Prosecution Against Sheriff Shofner, Deputy Monaghan, or Barnett-Hall.**

Defendants argue that Hoffman does not state a claim for
malicious prosecution because "the allegations establish probable
cause and lack of maliciousness."  Def. Mot. to Dismiss (d/e 14) at
18.  This Court has found that, "[u]nder Illinois common law," a
malicious prosecution claim requires five elements: "(1) the
commencement or continuance of a civil or criminal judicial
proceeding by the defendant; (2) the termination of the proceeding
in plaintiff's favor; (3) the absence of probable cause for the

proceeding; (4) the presence of malice, and (5) damages to the plaintiff." *Hawkins v. City of Champaign, Ill.*, 2011 WL 2446312, at 7 (C.D.Ill. 2011) (citing *Rodgers v. Peoples Gas, Light & Coke Co.*, 733 N.E.2d 835, 840 (Ill.App. 2000); *Sneed v. Rybicki*, 146 F.3d 478, 480-81 (7th Cir. 1998)).

Defendants challenge only the third and fourth elements, "absence of probable cause" and "the presence of malice."  Although the Court finds that, based on Hoffman's allegations, probable cause may not have existed for Hoffman's prosecution for battery, the Court must dismiss Hoffman's malicious prosecution claim because he does not allege facts that constitute "the presence of malice."  This Court held in *Hawkins* that "[t]o survive a motion to dismiss, a plaintiff bringing suit against arresting officers must allege that the officers committed some improper act after they arrested him without probable cause."  *See id.* (citing *Snodderly v. R.U.F.F. Drug Enforcement Task Force*, 239 F.3d 892, 901 (7th Cir. 2001)).

In *Snodderly*, the Seventh Circuit set forth a number of examples for alleged "improper acts" that would allow a malicious

Page 42 of 45

prosecution claim to proceed: "pressur[ing] or influenc[ing] the prosecutors to indict, [making] knowing misstatements to the prosecutor, testify[ing] untruthfully, or cover[ing] up exculpatory evidence." 239 F.3d at 901. In the present case, Hoffman does not allege *any* improper acts by Sheriff Shofner, Deputy Monaghan, or Barnett-Hall occurring after Hoffman was allegedly arrested without probable cause. Hoffman alleges that Sheriff Shofner may have had a motive to cause harm to Hoffman, in that Sheriff Shofner held a view on the landfill that opposed Hoffman's. Hoffman even alleges that Sheriff Shofner allegedly disclosed his motive by calling the Chairman of the Board after Hoffman's arrest and stating that "the new County Board Members have to learn how things work." Amended Compl. (d/e 10) at ¶ 40. However, Hoffman does not allege any facts that Sheriff Shofner, Deputy Monaghan, or Barnett-Hall enaged in an "improper act" after Hoffman's arrest, nor did Hoffman attempt to point to such an allegation is his response.

Hoffman alleges that a judge from another county was brought in for the bail hearing; that the State's Attorney at the time referred the case to a special prosecutor; and that Hoffman was eventually

tried and acquitted.  However, Hoffman does not allege that Sheriff
Shofner, Deputy Monaghan, or Barnett-Hall had any interaction
with the judge that sat for the bail hearing, the State's Attorney, the
special prosecutor, or anyone at the jury trial.  In fact, Hoffman
does not allege a single fact regarding the actions of Sheriff Shofner,
Deputy Mongaghan, or Barnett-Hall after his arrest at all.   Because
Hoffman does not allege any "improper act" taken by a defendant
after his arrest, he does not sufficiently plead "the presence of
malice."  Therefore, Hoffman's malicious prosecution claim must be
dismissed.

## V.  <u>CONCLUSION</u>

For the foregoing reasons, Defendant's Motion to Dismiss is
now GRANTED IN PART and DENIED IN PART.

IT IS HEREBY ORDERED THAT Hoffman's claims for (1) First
Amendment retaliation against Markwell for civil damages, in his
official capacity; and (2) malicious prosecution against Barnett-Hall,
Sheriff Shofner, and Deputy Monaghan are DISMISSED; and
Hoffman's claims for (1) First Amendment retaliation against
Markwell for injunction, in his official capacity; (2) First Amendment

retaliation against Markwell in his individual capacity; and (3) section 1983 violation of Hoffman's First Amendment rights against DeWitt County under *Monell* may continue.

IT IS FURTHER ORDERED THAT Teresa Barnett-Hall, Sheriff Jered Shofner, and Deputy Sheriff Anthony Monaghan are DISMISSED as defendants.

ENTER: March 31, 2016.

s/ Sue E. Myerscough
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE