## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| **TERRY HOFFMAN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **DEWITT COUNTY, ILLINOIS, an** | ) | **Case No. 15-cv-03026** |
| **Illinois Governmental Entity, and** | ) | |
| **DAN MARKWELL, State's Attorney** | ) | |
| **for Dewitt County, Illinois, in His** | ) | |
| **Individual and Official Capacities,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## OPINION

**SUE E. MYERSCOUGH, U.S. District Judge:**

Now before the Court is the Motion for Summary Judgment
(d/e 34) filed by Defendants DeWitt County, Illinois (DeWitt County
or County), and Dan Markwell (Markwell).  Because Plaintiff Terry
Hoffman has failed to produce evidence upon which a reasonable
jury could conclude that Defendants violated his First Amendment
rights, Defendants' Motion for Summary Judgment is GRANTED.

## I. INTRODUCTION

On January 30, 2015, Plaintiff filed a Complaint against
DeWitt County and several county employees, alleging claims

pursuant to 42 U.S.C. § 1983 for violations of Plaintiff's rights under the First and Fourth Amendments of the United States Constitution. Plaintiff's Complaint also asserted state-law claims for false arrest, false imprisonment, and malicious prosecution. Plaintiff's Complaint alleged that he was arrested by the DeWitt County Sheriff's Department and prosecuted for committing a battery against Teresa Barnett-Hall, the Emergency Management Agency Director, in an effort to suppress his public opposition to the placement of hazardous waste in a landfill close to Clinton, Illinois. Markwell was not named as a defendant in the Complaint.

On April 24, 2015, the Court granted Plaintiff's Motion for Leave to File Amended Complaint (d/e 9). Accordingly, Plaintiff's Amended Complaint (d/e 10) was filed on that date. The Amended Complaint alleges § 1983 claims against DeWitt County and Markwell for violating Plaintiff's First Amendment rights. The Amended Complaint also alleged state-law malicious prosecution claims against several other county officials.

On May 22, 2015, a Motion to Dismiss Plaintiff's Amended Complaint Pursuant to Rule 12(b)(6) (d/e 14) was filed. On March 31, 2016, the Court granted in part and denied in part the motion

to dismiss. Specifically, the Court dismissed Plaintiff's First Amendment claim for money damages against Markwell in his official capacity as DeWitt County State's Attorney and Plaintiff's malicious prosecution claims. The Court allowed Plaintiff's First Amendment <u>Monell</u> claim against DeWitt County and his First Amendment claim against Markwell, in his individual capacity, to proceed. Markwell remained in the suit in his official capacity because Plaintiff sought to enjoin him from restricting Plaintiff's participation in DeWitt County Board matters.

DeWitt County and Markwell now move for summary judgment on the First Amendment claims pending against them, arguing that Plaintiff suffered no deprivation of his First Amendment rights, that there is no evidence that Plaintiff's Complaint caused Markwell to retaliate against Plaintiff, and that Markwell is entitled to qualified immunity.

## II. JURISDICTION AND VENUE

The Court has subject matter jurisdiction over Plaintiff's § 1983 claims because they arise under the United States Constitution and are brought pursuant to a federal statute. <u>See</u> 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of

all civil actions arising under the Constitution, laws, or treaties of the United States.").  The events giving rise to Plaintiff's claims occurred in DeWitt County, Illinois, which is located within the boundaries of the Central District of Illinois.  Venue is therefore proper in this district.  See 28 U.S.C. § 1391(b)(2) (stating that a civil action may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred").

## III. FACTS

Plaintiff was elected to serve on the DeWitt County Board (Board) from December 1, 2012, to December 1, 2016.  Plaintiff ran for a seat on the Board in 2012 to address public environmental safety concerns relating to the operation of a landfill one mile south of Clinton, Illinois.  The landfill is directly above the Mahomet Aquifer, a large body of water that sits below a portion of central Illinois.  Plaintiff chose not to run for reelection to the Board in 2016 because he only wanted to serve one term.  Plaintiff has no plans to run for a position on the Board in the future.

On August 12, 2014, DeWitt County filed a lawsuit against Clinton Landfill, Inc. (Clinton Landfill) regarding landfill hosting fees

and the terms of a hosting agreement between the County and Clinton Landfill. At the time this suit was filed, Karle Koritz was the DeWitt County State's Attorney. On December 18, 2014, the Board appointed Markwell as the DeWitt County State's Attorney. Markwell was elected to a four-year term in 2016 and is currently serving as the DeWitt County State's Attorney.

On January 22, 2015, Markwell informed the Board that Clinton Landfill had approached him about discussing a settlement to the County's lawsuit. Markwell asked the Board for permission to pursue settlement discussions. The Board, Plaintiff included, voted to authorize Markwell to pursue settlement discussions with Clinton Landfill. Board members informed Markwell of issues they believed were important in settlement negotiations, but the Board did not appoint a Board member to monitor the negotiations. After receiving the Board's authority to negotiate, Markwell began working on a settlement agreement with Clinton Landfill's attorney.

On January 30, 2015, Plaintiff filed his Complaint against DeWitt County and several county employees. Plaintiff alleged that, in December 2012, Emergency Management Agency Director Teresa Barnett-Hall, DeWitt County Sheriff Jered Shofner, and DeWitt

County Sheriff's Deputy Anthony Monaghan had Plaintiff arrested to suppress Plaintiff's speech regarding the Clinton landfill and the Mahomet Aquifer. Several paragraphs of Plaintiff's Complaint contained factual allegations about the landfill or the aquifer.

On February 18, 2015, Markwell became aware of Plaintiff's Complaint after he was served with a copy. Upon reviewing the Complaint, Markwell observed that the Complaint contained factual allegations about the Clinton landfill and the Mahomet Aquifer. Markwell also observed that the Complaint alleged claims against Sheriff Shofner, Director Barnett-Hall, and several DeWitt County sheriff's deputies.

On February 20, 2015, Plaintiff sent an e-mail to Markwell, requesting information on the landfill, the aquifer, and the settlement negotiations with Clinton Landfill. The same day, Markwell sent a response to Plaintiff and Plaintiff's attorney, Richard Steagall (Steagall), stating, in relevant part, as follows:

> On January 30, 2015, you caused to be filed, through your attorney Richard Steagall, a complaint in the United States District Court alleging various violations of the law. Said complaint names DeWitt County, as well as several current and former county employees, as respondents. In said complaint you have asked for damages against the named respondents. This places

you in an adverse position to DeWitt County. As I'm sure you are aware, I do not represent any county board members in their individual capacities as board members. I do, however, represent DeWitt County and the County Board as a whole. Furthermore, I am bound by the Rules of Professional Conduct in this matter. Under said Rules, I cannot discuss any of these issues with you as you are represented by counsel. I strongly suggest that any further questions or concerns be directed to your attorney. I am copying Mr. Steagall on this email.

Because Markwell represents the County, which was named as a defendant in Plaintiff's Complaint, Markwell was concerned that communicating with Plaintiff about issues related to Plaintiff's lawsuit, such as the landfill and the aquifer, would violate Rule 4.2 of the Illinois Rules of Professional Conduct.[1] Markwell understands Rule 4.2 to prohibit him from communicating with a party on a matter if the party is adverse to DeWitt County on that matter and represented by an attorney, unless the attorney consents to the communication. Markwell's e-mail was intended to convey his concerns regarding Rule 4.2, which is why Markwell sent the e-mail to Steagall.

---

[1] "In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order." Ill. Rules of Prof'l Conduct R. 4.2.

Plaintiff forwarded Markwell's e-mail to Steagall and informed him that Markwell's e-mail was in response to Plaintiff's request for legal opinions from Markwell on Board issues. Plaintiff asked Steagall for clarification on where Plaintiff stood on Board issues.

On February 23, 2015, Plaintiff sent an e-mail to Steagall and Markwell that read, in relevant part, as follows:

> Dan, I forwarded your Feb 20th reply back to me, and also on my county board questions to you, on to Mr. Steagall. We had a conversation on this that afternoon. Mr. Steagall has said that that the defense lawyer has talked to him today on this issue. There seems to be an agreement that this case does not affect my participation with the county board, other than when issues of my specific case is involved, then I am to abstain from participation. You do not represent me on this suit, so I will not be discussing it with you.
>
> As per all other county business, the States Attorney's office is my representative as a county board member or as a private individual.
>
> Per my questions of Feb 20th pertaining to county business, can they be answered by the states attorney's office.
>
> I would still like to set an appointment up to come in and talk on these issues, at a time convenient for you. Please let me know when that might be.
>
> * * *
>
> Rick,

This is my reply back to Mr. Markwell.  Can this be
followed up with Mr. Markwell, that you have no issues
with the States Attorney's office being my representation
on county board business as a board member, and
county business as a citizen of this county, that do not
pertain to the suit filed.

I would like to see that this issue of representation gets
cleared up quickly, so that we all know where we stand
on representation, and we can move forward.

My e-mail to Mr. Markwell on county business is also
enclosed.  I had asked these questions on Feb 20.

please let me know the progress on getting this matter
cleared up in a timely fashion.

Markwell found Plaintiff's e-mail confusing, but interpreted it

as a directive from Plaintiff not to discuss the issues relating to

Plaintiff's lawsuit with him.  Markwell interpreted these issues to

include the Clinton landfill and the Mahomet Aquifer.  Plaintiff's e-

mail did not allay Markwell's concerns that discussing the landfill

or aquifer with Plaintiff could violate Rule 4.2.  Because Plaintiff's e-

mail directed Steagall to contact Markwell, Markwell thought it best

to wait to hear from Steagall before contacting Plaintiff directly.

Days after Plaintiff sent his February 23 e-mail, Markwell

became aware of and reviewed the Illinois Public Officers Prohibited

Activities Act (POPAA).  In reviewing this statute, Markwell

concluded that Plaintiff's participation on certain issues as a Board member could violate POPAA, given that Plaintiff had filed a lawsuit against the County and several of its employees.[2]

Each year, in deciding where to allocate DeWitt County's resources, the Board determines how much money is budgeted for the DeWitt County Sheriff's Office and the Emergency Management Agency. The budgets of the DeWitt County Sheriff's Office and the Emergency Management Agency, including the salaries of the DeWitt County Sheriff, the DeWitt County sheriff's deputies, and the Director of the Emergency Management Agency, are paid, in part, from DeWitt County's General Fund. Funds from the County's General Fund can also be transferred to the County's Tort/Liability Fund, the fund from which the County pays liability claims. The less money the Board allocates to the budgets of the DeWitt County Sheriff's Office and the Emergency Management Agency, the more money the County can allocate to the Tort/Liability Fund. DeWitt

---

[2] Section 3(a) of POPAA states as follows: "No person holding any office, either by election or appointment under the laws or Constitution of this State, may be in any manner financially interested directly in his own name or indirectly in the name of any other person, association, trust, or corporation, in any contract or the performance of any work in the making or letting of which such officer may be called upon to act or vote." 50 Ill. Comp. Stat. 105/3(a).

County has a self-insured retention of $250,000 on liability claims, meaning that the County must pay the first $250,000 needed to defend or settle liability lawsuits. If Plaintiff entered into a settlement agreement with the County in this case, the settlement would be paid from the Tort/Liability Fund.

On March 2, 2015, Plaintiff sent an e-mail to Markwell asking various questions about the landfill, the 2002 landfill siting, the landfill's EPA permit, and the enforceability of the landfill host agreement. At the time, Steagall had not responded to Plaintiff's February 23 e-mail.

Approximately 90 minutes after Plaintiff sent his March 2 e-mail, one of Defendants' attorneys, Benjamin Jacobi (Jacobi), e-mailed a letter to Markwell and Steagall that memorialized Markwell's concerns that Plaintiff was violating POPAA. Markwell discussed the letter with Jacobi before Jacobi sent it. The letter stated, in relevant part, as follows:

Dear Mr. Steagall:

* * *

Mr. Hoffman's factual allegations in his complaint, his claims, and his requests for monetary damages place Mr. Hoffman's interests directly in conflict with the interests

of DeWitt County, Sheriff Shofner and his employees, and Director Barnett-Hart. Although Mr. Hoffman is a County Board Member, the conflicts of interest between him and the Defendants preclude Mr. Hoffman from participating in certain County business and any such participation violates the Illinois Public Officer Prohibited Activities Act, 50 ILCS 105/1 et seq.

You have already agreed that Mr. Hoffman would recuse himself from any decisions related to his lawsuit. It is the position of DeWitt County that Mr. Hoffman has a conflict of interest to, and should recuse himself from, participation in County business, including debates and votes, related to the following non-exhaustive topics:

**1. All Business Related to Pending Litigation, Including But Not Limited to His Current Litigation, and Settlements of Disputes.** Obviously, any decisions on how to handle Hoffman's pending litigation with the County are in conflict with Hoffman's interests. But, more broadly, decisions in other litigation may relate to and depend on decisions in Hoffman's litigation. The County may have to prioritize settlement, and has an interest in litigating weaker cases to discourage future lawsuits. Such decisions and strategy require a comparison of pending cases and discussion of all pending lawsuits. The handling of all lawsuits are in conflict with Hoffman's interests. Hoffman should recuse himself from all business related to any pending litigation and settlement of disputes.

**2. All Business Related to the DeWitt County Sheriff and His Employees.** Hoffman has sued the Sheriff and his employees, and seeks $750,000 in compensatory and $100,000 in punitive damages from those defendants. His interests are directly in conflict with the interests of the Sheriff and his employees, including but not limited to the financial interests of the Sheriff and his employees. Hoffman should recuse

himself from all business related to the Sheriff and his employees, including all decisions related to the Sheriff's finances.

**3.  All Business Related to the Department of Emergency Management.**  Hoffman sued the Director of the Department of Emergency Management, Ms. Barnett-Hart, related to acts that allegedly took place in Ms. Barnett-Hart's office.  His lawsuit also implicates her Department's operations.  He seeks $100,000 punitive damages from Director Barnett-Hart.  Hoffman's interests conflict directly with the Department and with the interests of Director Barnett-Hart.  He should recuse himself from all business related to the Department of Emergency Management and to Director Barnett-Hall, including but limited to the Department's finances.

**4.  All Business Related to the Landfill and Peoria Disposal Company.**  Hoffman's complaint makes specific allegations related to the Landfill and Peoria Disposal Company.  His participation in business related to the Landfill and Peoria Disposal Company conflict with the County's handling of the factual allegations in complaint (for example, if the County denies Hoffman's factual allegations in the complaint).  His allegation that the Defendants' actions violated his First Amendment rights conflicts with the County's defense of Hoffman's lawsuit and the County's handling of all litigation related to the Landfill.  His allegations undermine current negotiations between the County and the Landfill. Hoffman should recuse himself from all business related to the Landfill and the Peoria Disposal Company.

**5.  All Business Related to DeWitt County's Finances.**  Hoffman requests payment by the County of compensatory damages in the amount of $750,000. Although the County has insurance, much of that damages award would be paid out-of-pocket by the County pursuant to its deductible, funded by County

taxpayers.  Further, any payment may affect future premiums owed by the County.  The ability of the County to pay out-of-pocket for damages is directly related to the availability of County funds, which in turn relates to County revenue and expenditures.  Mr. Hoffman's interests lie in ensuring that the County has available funds to pay his settlement, which are in conflict with the County's interests in making expenditures and generally engaging in financial decisions.  Hoffman should recuse himself from participating in all business related to DeWitt County's finances including, but not limited to, authorization of contracts and expenditures.

**6.  Refrain from Discussing the Above Issues with Other County Board Members and the DeWitt County State's Attorney.**  Every DeWitt County Board Member and the DeWitt County State's Attorney, as agents of the County and whose obligations are to the County, has a conflict of interest with Hoffman in the above topics.  Hoffman should refrain from discussing any of the above issues with any current County Board Member or the County State's Attorney.

These issues became readily apparent at the February 19, 2015 County Board Meeting, where Mr. Hoffman participated in County financial business, business related to the Sheriff's Department, and business related to the Department of Emergency Management.  He even went so far as to question directly Director Barnett-Hall during the County Board Meeting.

After receiving the e-mail containing Jacobi's letter, Markwell

forwarded the e-mail and the letter to Dee Dee Rentmeister

(Rentmeister), the DeWitt County administrative assistant.

Markwell asked Rentmeister to forward the letter to the other Board

members.  Markwell's purpose in asking Rentmeister to forward the letter was to update the other Board members on the status of Plaintiff's lawsuit, not to pass on any message, advice, or directive. Rentmeister forwarded Jacobi's letter to all Board members except Plaintiff and Ron Savage, the latter of whom did not have an e-mail address.

The e-mail sent by Rentmeister containing Jacobi's letter was received by nine of the Board members.  All nine interpreted the e-mail and letter as an update on pending litigation, not a directive or advice from Markwell to do anything, such as withhold documents and information from Plaintiff.  None of the Board members who received a copy of Jacobi's letter withheld documents or information from Plaintiff or impeded Plaintiff's participation as a Board member.

In early April 2015, Markwell and Clinton Landfill's attorney drafted a settlement agreement in the case the County filed against Clinton Landfill in August 2014.  Markwell invited the Board members to make an appointment with him to review the settlement agreement.

On April 14, 2015, Board member Sherrie Brown (Brown) e-mailed Markwell to inquire as to the status of the negotiations regarding host fees owed to the County by Clinton Landfill. On that same date, Markwell responded in an e-mail that stated, in relevant part, as follows:

> I have negotiated a Third Amendment to the Host Fee Agreement as well as a Mutual Release and Settlement Agreement to settle the pending lawsuit with [Clinton Landfill] and avoid any future litigation against the County stemming from any alleged breaches by the County. It is my intent to present the agreements at the next board meeting. As to unpaid hosting fees through December 2014, within 7 days of the board accepting the agreement, the County would receive an initial payment of $542,671.70. On or before May 20, 2015, the County will receive a second payment of $542,671.70. Additionally, payment for hosting fees accrued for the first quarter of 2015 will also be paid within 7 days of acceptance of the agreement.

Brown sent another e-mail to Markwell on April 14, 2015, thanking him for his prompt reply and asking whether the amendment dealt strictly with fees. Markwell responded that same day in an e-mail that read, in relevant part, as follows:

> No. There are several changes which either add conditions or delete verbiage from prior amendments that will no longer be needed. Here is a summary of the main points:

1.  The host fee rate will change, from the former variable rate of $1.80/ton up to $3.37 /ton, to a new fixed rate of $2.54/ton for non-hazardous solid waste.  Previously the tonnage would have had to exceed 1,000 tons/day to achieve this rate.  Any adjustment shall not exceed 2.5% beginning in 2030.  Any coal combustion residuals would be subject to an additional host benefit fee of $1.00/ton.

2.  [Clinton Landfill] will withdraw its application with the USEPA to permit a Chemical Waste Landfill and shall not file another application with the USEPA in the future.

3.  In 2009, the Board had approved a railroad crossing permit for [Clinton Landfill] which has not yet been issued.  County Engineer Mark Mathon has reviewed the specifics with engineers from the landfill and has prepared a permit with agreeable language subject to compliance with all applicable laws and approval of the Illinois Commerce Commission.

4.  The County will support the Clinton Sanitary District acceptance and treatment of leachate and gas condensate from the landfill at fair market rates (excluding leachate or gas condensate from the Chemical Waste Unit).

5.  [Clinton Landfill] will not accept for disposal any PCB's, pursuant to TSCA, that need to be disposed of in a Chemical Waste Landfill.

6.  [Clinton Landfill] will not accept any MGP Source Material.

If you would like to look at the Agreements, I would be happy go over them with you at a mutually agreeable time.

On April 15, 2015, Plaintiff sent Markwell an e-mail that read, in relevant part, as follows:

> Dan, I understand that negotiation talks on non-payment of hosting fees have been taking place, and that several board members have been informed on what has been taking place with these negotiations, and reports.
>
> As a board member, I would like to ask to be updated with negotiation proceedings and reports, on what has been taking place with negotiations and where we stand at the moment.

After receiving Plaintiff's e-mail, Markwell spoke with Steagall over the phone and expressed concerns with communicating with Plaintiff in violation of Rule 4.2 of the Illinois Rules of Professional Conduct. During the call, Steagall did not consent to Markwell speaking to Plaintiff about matters related to Plaintiff's pending lawsuit.

After speaking with Steagall, Markwell responded to Plaintiff's April 15 e-mail. Markwell forwarded the entire April 14 e-mail string between him and Brown to Plaintiff, Steagall, and Jacobi. Markwell included the following statement in his e-mail:

> Mr. Hoffman,
>
> I am responding to both your phone call and e-mail from earlier today. As we have previously discussed, I believe that I should not be discussing matters directly with you

that I believe are issues involved with your federal lawsuit against the county. I am forwarding an e-mail that I had sent to your fellow board member, Ms. Brown, yesterday. Hopefully this will answer many of your questions. This information is being provided as information only and should not be construed to imply that I believe you should engage in discussions on these issues or vote on them. Pursuant to previous notice sent to your attorney, Richard Steagall, on March 2, 2015, you are aware of potential issues that may pertain to your ability to engage in certain conduct as a county board member that might fall under 50 ILCS 105/1 et seq., the Illinois Public Officer Prohibited Activities Act. I strongly suggest that you discuss these issues with your attorney. If you wish to look at the Agreements, I will be happy to show them to you at a mutually agreeable time, however, based on your representation by Mr. Steagall, and your pending litigation against the county, I think it would be best for all concerned for your attorney to be present at any such meeting. I spoke to Mr. Steagall earlier in the day on this issue and am copying this e-mail to him as well as to the County's attorneys in the federal lawsuit.

Markwell's purpose in forwarding the e-mail chain was to provide Plaintiff with an accurate summary of the settlement agreement, the same information he had provided to other Board members who had requested information on the settlement agreement. Markwell also sought to express his concerns regarding Rule 4.2 and POPAA.

Brown made an appointment to meet with Markwell to discuss the settlement agreement on April 20, 2015. Less than two hours

before Brown's appointment, Steagall sent Markwell an e-mail that read, in relevant part, as follows:

> Dear Mr. Markwell:
>
> I represent Terry Hoffman, who is a member of the Dewitt County Board, on his claims for malicious prosecution and First Amendment that are the subject of a pending lawsuit against the Sheriff and other officers and employees in U.S. District Court.
>
> I represent him on those claims only and do not represent him on the various items related to his position as a Member of the Dewitt County Board. You are free to talk with Terry Hoffman directly without my presence or any notice to me whenever Mr. Hoffman schedules an appointment.

Other than a brief phone call on April 15, 2015, this e-mail was the first communication between Steagall and Markwell since February 23, 2015. Prior to April 20, 2015, Steagall had not consented to Markwell communicating with Plaintiff on matters related to Plaintiff's lawsuit. Markwell did not have time to consider Steagall's e-mail or discuss the e-mail with Jacobi before his scheduled meeting with Brown.

Plaintiff accompanied Brown to her appointment with Markwell on April 20. Markwell was unaware that Brown had invited Plaintiff to the meeting until Markwell met them in the lobby

of the DeWitt County State's Attorney's Office.  Markwell refused to meet with Plaintiff without Steagall being present.

Markwell met with Brown on April 20, 2015.  During the short meeting, Markwell showed Brown a draft of the settlement agreement for the County's lawsuit against Clinton Landfill.  Brown found that the settlement agreement was as Markwell summarized in the second e-mail he sent her on April 14, 2015.  After Brown's meeting with Markwell, Brown informed Plaintiff that the settlement agreement was close to what Markwell had described in his e-mail.

After meeting with Brown, Markwell reviewed Steagall's April 20 e-mail more closely.  Markwell found the e-mail to be unclear regarding Rule 4.2 and POPAA, and the e-mail did not alleviate Markwell's concerns that he would violate Rule 4.2 if he communicated with Plaintiff.  Markwell therefore sent an e-mail to Plaintiff on April 21, 2015, that read, in relevant part, as follows:

> Mr. Hoffman,
>
> Yesterday afternoon I received the attached e-mail from Richard Steagall, your attorney in the federal lawsuit you have brought against DeWitt County.  I have now had an opportunity to discuss this letter and the various potential conflicts created by your filing of the federal lawsuit against the County, in relation to your duties as a County Board Member, with the County's attorneys in

said federal lawsuit and with the Attorney Registration and Disciplinary Commission.

Based on your unscheduled appearance in my office yesterday, it's my belief that you wish to engage in discussions with me regarding settlement of the pending litigation that the County has brought against Clinton Landfill, Inc..  Although allegations raised in your federal lawsuit include issues regarding your position as a County Board Member and the Clinton Landfill, Mr. Steagall apparently has no problem with you discussing these issues with me.  Additionally you are seeking damages in your lawsuit against the County for $850,000 and, as I have previously indicated to you, the Settlement Agreement will involve payments to the County in excess of $1 million.  I am attempting to navigate the minefield created by the potential conflicts created by you in relation to the above facts.  In an effort to assist me in providing you further information than has been previously provided to you, please confirm the following:

1. You have received a copy of Mr. Steagall's e-mail and agree that he does not represent you on any County Board Issues as well as any issues that may involve the Illinois Public Officer Prohibited Activities Act (50 ILCS 105/1 et seq.).

2. You have received and read the letter dated March 2, 2015 from the County's attorneys (O'Halloran Kosoff Geitner & Cook, LLC) to Mr. Steagall outlining the potential conflicts of interest that you may have as a County Board Member in relation to the lawsuit you have brought against the County.

3. You have read and understand the Illinois Public Officer Prohibited Activities Act.

4.  You have had the opportunity to consult with legal
    counsel on the above issues.

Markwell felt that he could ethically accept a meeting with

Plaintiff without Steagall being present after Plaintiff confirmed the

four points listed in Markwell's e-mail.  Markwell intended to accept

a meeting with Plaintiff to review the settlement agreement relating

to the County's lawsuit against Clinton Landfill had Plaintiff

confirmed the four points in Markwell's e-mail.

Markwell sent his April 21 e-mail to Plaintiff 60 hours before

the Board was scheduled to vote on the settlement agreement.

Brown had taken only 30 minutes to review the settlement

agreement, so Plaintiff had enough time to confirm the points as

requested by Markwell and meet with Markwell to review the

settlement agreement prior to the Board meeting scheduled for April

23.  Plaintiff neither responded to Markwell's April 21 e-mail nor

confirmed the four points listed in Markwell's e-mail.  After

Markwell sent his April 21 e-mail, Plaintiff did not request an

appointment with Markwell to review the settlement agreement.

A Board meeting was held on April 23, 2015.  The posted

agenda for the meeting included a vote on the proposed settlement

agreement between the County and Clinton Landfill. At the
meeting, Plaintiff moved to table the approval of the settlement
agreement until May 21 so that the public and government officials
could view the settlement agreement and determine how it would
affect their health, safety, and welfare and the Mahomet Aquifer.
Plaintiff's motion was defeated by the Board.

Markwell read the settlement agreement to the Board and
discussed with the Board the major points of the agreement. Board
member Sherrie Brown found Markwell's summary of the
settlement agreement to be fairly accurate. Plaintiff asked
questions about the settlement agreement and those questions were
answered. The Board approved the settlement agreement by a 9 to
2 vote, with Plaintiff and Brown voting against the settlement
agreement.

## IV. LEGAL STANDARD

Summary judgment is proper if the movant shows that no
genuine dispute exists as to any material fact and that the movant
is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).
The movant bears the initial responsibility of informing the Court of
the basis for the motion and identifying the evidence the movant

believes demonstrates the absence of any genuine dispute of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). A genuine dispute of material fact exists if a reasonable trier of fact could find in favor of the nonmoving party. <u>Carroll v. Lynch</u>, 698 F.3d 561, 564 (7th Cir. 2012). When ruling on a motion for summary judgment, the Court must construe facts in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor. <u>Woodruff v. Mason</u>, 542 F.3d 545, 550 (7th Cir. 2008). A district court may not make credibility determinations at summary judgment. <u>Estate of Perry v. Wenzel</u>, 872 F.3d 439, 454 (7th Cir. 2017).

A party opposing a summary judgment motion may not rely solely upon the allegations in his pleading, but must "set forth specific facts showing that there is a genuine issue for trial." <u>Widmar v. Sun Chem. Corp.</u>, 772 F.3d 457, 460 (7th Cir. 2014). Neither assertions at "a high level of generality" nor "conclusory statements not grounded in specific facts are [] enough to stave off summary judgment." <u>King v. Ford Motor Co.</u>, 872 F.3d 833, 840-41 (7th Cir. 2017) (internal quotation marks omitted). Similarly, speculation or hunches about a defendant's motives cannot be used

to manufacture a genuine dispute of material fact.  <u>Springer v.</u>

<u>Durflinger</u>, 518 F.3d 479, 484 (7th Cir. 2008).

## V. ANALYSIS

Before proceeding to the merits of Defendants' Motion for

Summary Judgment, the Court must address three preliminary

issues, two of which bear on the facts set forth above.  First,

Plaintiff concedes that because he is no longer a member of the

DeWitt County Board, his claim for injunctive relief against

Defendant Markwell in his official capacity is moot and should be

dismissed.  Accordingly, that claim is DISMISSED WITH

PREJUDICE.

Second, Plaintiff failed to respond to the material facts

asserted by Defendants in paragraphs 25, 59, and 68 of the Motion

for Summary Judgment.  Accordingly, the Court treats the facts

included in those paragraphs as admitted by Plaintiff.  <u>See</u> CDIL-LR

7.1(D)(2)(b)(6) ("A failure to respond to any numbered fact will be

deemed an admission of the fact.").

Third, for the most part, Plaintiff, in disputing Defendants'

asserted material facts, does not cite to materials in the record or

explain how the materials cited by Defendants fail to establish the

absence of a material dispute, as required by the Federal Rules of Civil Procedure and the Local Rules of the Central District of Illinois.  <u>See</u> Fed. R. Civ. P. 56(c)(1); CDIL-LR 7.1(D)(2)(b)(2). Accordingly, the Court treats all facts disputed by Plaintiff without factual support or an analysis of the materials cited by Defendant as undisputed for purposes of Defendants' summary judgment motion.  <u>See</u> Fed. R. Civ. Pro. 56(e)(2) (allowing district courts to treat facts as undisputed for purposes of a summary judgment motion if a party "fails to properly address another party's assertion of fact as required by Rule 56(c)").

Having commented on these issues, the Court now proceeds to analyze whether Defendants are entitled to summary judgment on Plaintiff's remaining claims.  The Court begins with Plaintiff's First Amendment retaliation claim against Defendant Markwell.

A.    Defendant Markwell is entitled to qualified immunity on Plaintiff's First Amendment retaliation claim.

"The affirmative defense of qualified immunity protects government officers from liability for actions taken in the course of their official duties if their conduct does not violate 'clearly established statutory or constitutional rights of which a reasonable

person would have known.'" <u>Hardaway v. Meyerhoff</u>, 734 F.3d 740, 743 (7th Cir. 2013) (quoting <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982)). Because the focus is on whether the official had fair notice that his conduct was unlawful, "reasonableness is judged against the backdrop of the law at the time of the conduct." <u>Kisela v. Hughes</u>, 138 S. Ct. 1148, 1152 (2018) (per curiam).

The two-prong test used to determine if qualified immunity applies requires the Court to determine "(1) whether the facts, viewed in a light most favorable to the injured party, demonstrate that the conduct of the [defendant] violated a constitutional right, and (2) whether that right was clearly established at the time the conduct occurred." <u>Hardaway</u>, 734 F.3d at 743 (citing <u>Pearson v. Callahan</u>, 555 U.S. 223, 232 (2009)). The Court has discretion to begin its analysis with either prong. <u>See</u> <u>Novoselsky v. Brown</u>, 822 F.3d 342, 354 (7th Cir. 2016) (citing <u>Pearson</u>, 555 U.S. at 236).

    1.    The undisputed facts, viewed in a light most favorable to Plaintiff, do not demonstrate that Defendant Markwell violated Plaintiff's First Amendment rights.

For a public employee to make a prima facie case for a violation of his First Amendment rights, he must present evidence that "(1) his speech was constitutionally protected; (2) he suffered a

deprivation likely to deter free speech; and (3) his speech was at least a motivating factor in the [defendant's] actions." Consolino v. Towne, 872 F.3d 825, 829 (7th Cir. 2017). In Defendants' motion for summary judgment, Defendants argue that Plaintiff has failed to produce evidence upon which a reasonable jury could find that Plaintiff suffered a deprivation likely to deter free speech or that Plaintiff's Complaint was a motivating factor in Markwell's actions. The Court agrees with Defendants on both points.

     a.    Plaintiff has not produced evidence upon which a reasonable jury could find that he suffered a deprivation likely to deter free speech.

In the context of First Amendment retaliation, any deprivation "likely to deter the exercise of free speech" is actionable. Mosely v. Bd. of Educ. of City of Chicago, 434 F.3d 527, 534 (7th Cir. 2006). Liability can exist if the defendant engages in a "campaign of harassment which though trivial in detail may have been substantial in gross." Bart v. Telford, 677 F.2d 622, 625 (7th Cir. 1982). Although the retaliatory harassment need not be extreme, no First Amendment violation occurs if "the harassment is so trivial that a person of ordinary firmness would not be deterred" from exercising his First Amendment rights. Massey v. Johnson, 457

F.3d 711, 720 (7th Cir. 2006).  A mere inconvenience does not rise to the level of an actionable deprivation.  See DeGuiseppe v. Vill. of Bellwood, 68 F.3d 187, 192 (7th Cir. 1995).

"Retaliatory speech is generally actionable only in situations of threat, coercion, or intimidation that punishment, sanction, or adverse regulatory action w[ill] immediately follow."  Novoselsky, 822 F.3d at 356 (alteration in original) (internal quotation marks omitted).  "In certain cases, a public official may also face liability where he retaliated by subjecting an individual to embarrassment, humiliation, and emotional distress."  Id. (internal quotation marks omitted).  However, liability for subjecting a person to embarrassment, humiliation, or emotional distress is "usually limited to the release of highly personal and extremely humiliating details to the public."  Id. (internal quotation marks omitted).  The high bar to establish liability for retaliatory speech is due to the wide berth for vigorous debate that the First Amendment affords public officials.  See id.

Applying this framework to the undisputed facts of this case, Plaintiff suffered no deprivation likely to deter the exercise of free speech.  In responding to Defendants' summary judgment motion,

Plaintiff bases his First Amendment retaliation claim on two actions taken by Markwell: (1) Markwell's directive to Rentmeister to forward Jacobi's March 2, 2015, letter to members of the DeWitt County Board and (2) Markwell's refusal to meet with Plaintiff on April 20, 2015.  <u>See</u> Response (d/e 38), pp. 18-20.  No reasonable jury could view these two actions, even taken together, as a deprivation sufficient to support a finding of liability on a First Amendment retaliation claim.

Jacobi's letter was addressed to Steagall and asserted that Plaintiff had conflicts of interest on several Board matters, including business relating to the Clinton landfill.  Plaintiff admits that Markwell's purpose in having the letter sent to the Board members was to update them on the status of Plaintiff's lawsuit, not to relay any message, advice, or directive.  Plaintiff also admits that the Board members who received the letter viewed it as a litigation update, not a directive or advice to take any particular action, such as withhold documents or information from Plaintiff.  None of the Board members who received Jacobi's letter withheld information or documents from Plaintiff or impeded Plaintiff's participation as a Board member.  As such, the letter was not intimidating or coercive,

nor did it include highly sensitive personal information about Plaintiff. The Court fails to see how Markwell's directive that Jacobi's letter be sent to most of the Board members resulted in any appreciable deprivation, let alone a deprivation likely to deter free speech.

Likewise, Markwell's refusal to meet with Plaintiff on April 20, 2015, was not a deprivation likely to deter free speech. In response to an e-mail sent by Plaintiff on April 15, 2015, Markwell informed Plaintiff that Plaintiff could review documents with him if Steagall was present. In addition, the day after Markwell refused to meet with Plaintiff, Markwell provided Plaintiff with an option to view the documents without Steagall being present: confirm (1) receipt of the April 20 e-mail from Steagall and the scope of Steagall's representation, (2) receipt and review of Jacobi's March 2, 2015, letter, (3) review and an understanding of POPAA, and (4) the opportunity to consult with counsel. Plaintiff had over two days to e-mail Markwell back and confirm the four points referenced in Markwell's April 21 e-mail before the Board meeting scheduled for April 23, 2015. Had Plaintiff done so, he could have met with Markwell to review documents without Steagall being present.

Based on these facts, the only deprivation Plaintiff suffered was not being able to view documents with Markwell without either bringing Steagall to Markwell's office or confirming the four points listed in the e-mail Markwell sent to Plaintiff on April 21, 2015. This minor inconvenience is not the sort of deprivation that can serve as the basis for liability on a First Amendment retaliation claim. <u>See</u> <u>DeGuiseppe</u>, 68 F.3d at 192-93 (affirming grant of summary judgment against a plaintiff where a defendant, presented with the plaintiff's request for light duty, required the plaintiff to "obtain additional medical counsel").

This holding is further supported by the fact that Markwell, on April 15, 2015, forwarded to Plaintiff e-mails that Markwell had sent to Sherrie Brown about the settlement agreement relating to the County's lawsuit against Clinton Landfill and a related host fee agreement amendment. Therefore, Markwell's refusal to meet with Plaintiff on April 20 did not leave Plaintiff without any information about the documents he wanted to discuss with Markwell. Although one can reasonably infer that Plaintiff had at least one additional question about the documents or needed clarification on at least one point referenced in Markwell's e-mails, Plaintiff does

not clarify what information he was not able to obtain because Markwell refused to meet with him, information that he might have obtained by asking questions at the April 23, 2015, Board meeting.

Plaintiff's actions at the Board meeting, also support the Court's conclusion that Markwell's complained-of actions did not rise to the level of a deprivation likely to deter free speech. Despite the fact that Markwell had Jacobi's letter forwarded to most of the Board members and refused to meet with Plaintiff on April 20, Plaintiff attended the Board meeting, made a motion to table the vote on the approval of the settlement agreement, and asked questions, which were answered, about the settlement agreement. Plaintiff also voted against approving the settlement agreement.

These actions belie any assertion that Markwell's actions deterred Plaintiff from exercising his First Amendment rights. If Markwell's actions did not deter Plaintiff from exercising his right to speak on issues related to the landfill and aquifer—the same type of speech Plaintiff alleges resulted in him being falsely arrested and maliciously prosecuted—there is no reason to think that Markwell's actions would have deterred any other reasonable Board member from exercising their First Amendment rights.

Plaintiff attempts to raise a genuine dispute of material fact as to whether he suffered an actionable deprivation by pointing to the Court's Opinion (d/e 19) entered on March 31, 2016, in which the Court held that Plaintiff had sufficiently alleged a deprivation likely to deter free speech in the Amended Complaint.  However, just because Plaintiff pleaded enough facts to survive a motion to dismiss does not mean that Plaintiff has produced evidence of a deprivation sufficient to defeat a summary judgment motion.  See Widmar, 772 F.3d at 460 (noting that a party opposing a summary judgment motion may not rely solely upon the allegations in his pleading).  Indeed, the factual allegations in Plaintiff's Amended Complaint that allowed Plaintiff's First Amendment claims to proceed in March 2016 stand in stark contrast to the undisputed facts in this case.  See Am. Complaint (d/e 10), ¶¶ 45, 48, 50 (alleging that the DeWitt County Board, on Markwell's advice, excluded Plaintiff from receiving information, participating in Board meetings, or voting on matters relating to certain issues and that Markwell refused to provide Plaintiff with any information regarding the resolution of the County's litigation against Clinton Landfill).  Plaintiff has produced no evidence that Markwell or the Board acted

as Plaintiff alleges in his Amended Complaint, and the Court's March 2016 Opinion provides no basis to deny Defendants' Motion for Summary Judgment.

Plaintiff has failed to produce evidence upon which a reasonable jury could find that he suffered a deprivation likely to deter the exercise of free speech.  Plaintiff has therefore failed to produce evidence that would sustain a finding that Markwell violated his First Amendment rights.  Accordingly, Defendant Markwell is entitled to qualified immunity on Plaintiff's First Amendment retaliation claim.

      b.    Plaintiff has not produced evidence upon which a reasonable jury could find that Markwell's actions were retaliation for Plaintiff's Complaint.

Even if Plaintiff had produced evidence creating a genuine dispute on whether he suffered a deprivation likely to deter the exercise of free speech, Defendant Markwell would still be entitled to qualified immunity and summary judgment on Plaintiff's First Amendment retaliation claim.  The plaintiff bears the initial burden of demonstrating that "his conduct was a substantial or motivating factor in the defendant's action against him."  <u>Consolino</u>, 872 F.3d at 829.  If a plaintiff produces evidence that his speech was at least

a motivating factor of the defendant's retaliation, the burden shifts to the defendant to rebut "the causal inference raised by the plaintiff's evidence." Kidwell v. Eisenhauer, 679 F.3d 957, 965 (7th Cir. 2012). The defendant can meet its burden by offering an alternative explanation for his conduct. See McGreal v. Village of Orland Park, 850 F.3d 308, 313 (7th Cir. 2017). If the defendant meets its burden, the burden shifts back to the plaintiff to provide evidence that the defendant's "proffered reason was pretextual and that the real reason was retaliatory animus." Id.; Thayer v. Chiczewski, 705 F.3d 237, 252 (7th Cir. 2012) ("[A] plaintiff must produce evidence upon which a rational finder of fact could infer that the defendant's proffered reason is a lie.").

"On summary judgment, of course, the plaintiff's burden is simply to demonstrate that there is a genuine issue of material fact on the question of causation." Yahnke v. Kane County, Illinois, 823 F.3d 1066, 1071 (7th Cir. 2016). Although the persuasiveness of a defendant's non-retaliatory explanation is ordinarily "for the finder of fact to assess," summary judgment should be granted when, in light of the defendant's unrebutted evidence, "the court can say without reservation that a reasonable finder of fact would be

compelled to credit the [defendant's] case on this point." <u>Massey</u>, 457 F.3d at 719.

Given the undisputed facts in this case, no reasonable jury could find that Markwell's complained-of actions were motivated by a desire to retaliate against Plaintiff for filing his Complaint. Plaintiff admits that Markwell's decision to have Jacobi's letter sent to all but two of the Board members was motivated solely by a desire to keep the Board members apprised of the status of Plaintiff's lawsuit. Plaintiff further admits that Markwell did not have the letter forwarded for the purpose of advising or directing the Board members to take any particular action. Therefore, it is beyond reasonable debate that Markwell's act of having the letter forwarded to most of the Board members was not retaliatory in nature.

Plaintiff fares no better in creating a genuine dispute of material fact on causation with respect to Markwell's refusal to meet with him on April 20, 2015. As on the deprivation prong, Markwell's other actions help to establish that his motive in refusing to meet with Plaintiff was motivated not by a retaliatory intent, but by concerns about Rule 4.2 and POPAA. The e-mails

Markwell sent to Plaintiff after learning of Plaintiff's Complaint all referenced Markwell's concerns with either Rule 4.2 or POPAA. Further, if Markwell's refusal to meet with Plaintiff on April 20 was retaliation against Plaintiff for filing his Complaint, why would Markwell forward the April 14 e-mails between him and Brown to Plaintiff? Why would Markwell agree to meet with Plaintiff and allow him to review the settlement agreement if Steagall was also present? Why would Markwell later give Plaintiff an opportunity to review the settlement agreement without Steagall being present merely by responding to an e-mail? The only reasonable conclusion that can be drawn from Markwell's actions is that he was not retaliating against Plaintiff when he refused to meet with Plaintiff on April 20, 2015. Rather, Markwell was acting cautiously on account of concerns he had relating to Rule 4.2 of the Illinois Rules of Professional Conduct and POPAA. This conclusion is further supported by the e-mails Markwell sent Plaintiff after learning about the Complaint, all of which mentioned Markwell's concerns regarding Rule 4.2 or POPAA.

Perhaps Plaintiff could have pointed to evidence raising a factual dispute as to whether Markwell's proffered reasons for

refusing to meet with him on April 20 were pretextual.  But Plaintiff does not dispute that Markwell would have met with him to discuss the settlement agreement had Plaintiff brought Steagall to the meeting or that the e-mail Steagall sent Markwell on April 20 did not alleviate Markwell's concerns regarding Rule 4.2.  Plaintiff also does not dispute that Markwell did not have time to confer with Jacobi about Steagall's April 20 e-mail or that Markwell would have met with him to discuss the settlement agreement without Steagall being present had Plaintiff confirmed the four points referenced in Markwell's April 21 e-mail.  Finally, Plaintiff does not dispute that he had enough time to confirm the points referenced in Markwell's April 21 e-mail and meet with Markwell to discuss the settlement agreement prior to the April 23 Board meeting.

Plaintiff does argue that the e-mail Steagall sent Markwell on April 20 gave Markwell permission to discuss the settlement agreement with Plaintiff.  Plaintiff also argues that his participation as a Board member on issues related to the landfill and aquifer did not violate POPAA.  But even if Plaintiff is right on these legal issues, summary judgment in favor of Defendants is not improper here.  The relevant questions regarding causation are not whether

Markwell would have violated Rule 4.2 if he had discussed the settlement agreement with Plaintiff on April 20 or whether Plaintiff violated POPAA when he participated in Board matters related to the landfill and aquifer. The relevant question is whether Markwell's reasons for refusing to meet with Plaintiff on April 20 were concerns that he would violate Rule 4.2 in meeting with Plaintiff and that discussing the settlement agreement with Plaintiff might lead Plaintiff to violate POPAA. See <u>Pollard v. Rea Magnet Wire Co.</u>, 824 F.2d 557, 559 (7th Cir. 1987) ("A reason honestly described but poorly founded is not a pretext . . . ."). Plaintiff argues that Rule 4.2 and POPAA did not hinder Markwell's ability to discuss the settlement agreement with Plaintiff on April 20. But Plaintiff has not produced evidence indicating that Markwell did not have concerns about Rule 4.2 and POPAA when he refused to meet with Plaintiff.

Now, in one sense, Plaintiff's Complaint was the reason that Markwell took the actions that Plaintiff asserts violated his First Amendment rights. Indeed, had Plaintiff not filed suit against DeWitt County in January 2015, Markwell would not have been concerned about Rule 4.2 or POPAA when Plaintiff sought

information from him about the landfill and the settlement agreement. However, just because Markwell's actions were taken because Plaintiff filed a lawsuit does not mean that those actions were retaliatory. Holding otherwise would mean that Markwell would have violated Plaintiff's First Amendment rights if he had refused to discuss Plaintiff's lawsuit with Plaintiff on April 20, a proposition that not even Plaintiff would likely adopt. The undisputed facts establish that Markwell's actions were undertaken in a desire to navigate the potential pitfalls the filing of Plaintiff's Complaint created for Markwell, who represents the County on certain matters in his official capacity. See 55 Ill. Comp. Stat. 5/3-9005(a)(3)-(4).

Because Plaintiff has failed to produce evidence upon which a jury could find a First Amendment violation by Defendant Markwell, Plaintiff cannot demonstrate a violation of a clearly established constitutional right of which a reasonable person would have known. See Novoselsky v. Brown, 822 F.3d at 357. Accordingly, Defendant Markwell is entitled to qualified immunity on Plaintiff's First Amendment retaliation claim.

2.   The constitutional right that Plaintiff accuses Defendant
     Markwell of violating was not clearly established at the
     time of Markwell's conduct.

Even if Markwell's actions constituted a First Amendment

violation, Markwell is still entitled to qualified immunity because

the right he violated was not clearly established at the time

Markwell took those actions.  With respect to qualified immunity,

the plaintiff bears the burden of showing that the constitutional

right at issue was clearly established.  Kemp v. Liebel, 877 F.3d

346, 351 (7th Cir. 2017).  "The right allegedly violated must be

established not as a broad general proposition but in a

particularized sense so that the contours of the right are clear to a

reasonable official."  Dibble, 793 F.3d at 808 (internal quotation

marks omitted); see also White v. Pauly, 137 S. Ct. 548, 552 (2017)

(quoting Ashcroft v. al-Kidd, 563 U.S. 731, 742 (2011)) (reiterating

that "'clearly established law' should not be defined 'at a high level

of generality'").  "To be 'clearly established,' a right must be defined

so clearly that every reasonable official would have understood that

what he was doing violated that right."  Dibble v. Quinn, 793 F.3d

803, 808 (7th Cir. 2015).  This is not to say that an official's action

is protected by qualified immunity unless the same action has

previously been held unlawful, "but it is to say that in the light of pre-existing law the unlawfulness must be apparent." <u>Hope v. Pelzer</u>, 536 U.S. 730, 739 (2002). "In other words, immunity protects all but the plainly incompetent or those who knowingly violate the law." <u>White</u>, 137 S. Ct. at 551.

Here, the relevant question is whether Markwell, at the time he directed that Jacobi's letter be sent to Board members and refused to meet with Plaintiff, could have reasonably believed that he could take those actions without violating Plaintiff's First Amendment rights. Because the answer to that question is yes, Markwell is entitled to qualified immunity.

The Seventh Circuit has long held that "an entire campaign of harassment which though trivial in detail may have been substantial in gross" can violate a person's First Amendment rights. <u>Bart</u>, 677 F.2d at 625. In <u>Bart</u>, the Seventh Circuit distinguished a campaign of petty harassment that included baseless reprimands and ridicule for bringing a birthday cake to work from simply frowning at a person, with only the former constituting a deprivation sufficient for a First Amendment retaliation claim. <u>See id.</u> This dichotomy is consistent with the rule that there is no First

Amendment violation if "the harassment is so trivial that a person of ordinary firmness would not be deterred" from exercising his First Amendment rights. <u>Massey</u>, 457 F.3d at 720; <u>see also</u> <u>DeGuiseppe</u>, 68 F.3d at 192 (holding that a mere inconvenience does not rise to the level of an actionable deprivation).

All Markwell did was (1) direct that a letter detailing the conflicts created when Plaintiff, a Board member, filed suit against DeWitt County and several county employees be forwarded to other Board members and (2) require Plaintiff to either bring his attorney with him or confirm the four points in Markwell's April 21, 2015, e-mail before meeting with Markwell to review and discuss a settlement agreement involving the Clinton landfill, a document that had been accurately summarized in e-mails forwarded to Plaintiff by Markwell. Plaintiff has identified no Supreme Court or Seventh Circuit case law—and the Court has found none in its research—that would have put Markwell on notice that his actions undoubtedly constituted an actionable deprivation as opposed to a mere inconvenience that would not deter an ordinary person from exercising his First Amendment rights.

Plaintiff has not satisfied his burden of showing that Markwell violated a "clearly established" right.  Accordingly, Defendant Markwell is entitled to qualified immunity on Plaintiff's First Amendment retaliation claim.

   B.   DeWitt County is entitled to summary judgment on Plaintiff's <u>Monell</u> claim.

Plaintiff's <u>Monell</u> claim against DeWitt County fares no better than his claim against Markwell.  Because Plaintiff has failed to produce evidence upon which a reasonable jury could find that Markwell violated Plaintiff's First Amendment rights, DeWitt County cannot be liable under <u>Monell</u> for Markwell's actions.  <u>See</u> <u>City of Los Angeles v. Heller</u>, 475 U.S. 796, 799 (1986); <u>Matthews v. City of E. St. Louis</u>, 675 F.3d 703, 709 (7th Cir. 2012).  DeWitt County is entitled to summary judgment on Plaintiff's <u>Monell</u> claim.

## VI. CONCLUSION

For the reasons stated, the Motion for Summary Judgment (d/e 34) filed by Defendants DeWitt County, Illinois, and Dan Markwell is GRANTED.  The Clerk is DIRECTED to enter judgment in favor of Defendants against Plaintiff.  Any pending deadlines are

TERMINATED.  Any scheduled settings are VACATED.  This case is

CLOSED.


ENTER:  August 8, 2018


                              /s/ Sue E. Myerscough
                              SUE E. MYERSCOUGH
                              UNITED STATES DISTRICT JUDGE